UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARK JONES,                       Case No. 11-12560

       Plaintiff,                   Robert H. Cleland
vs.                               United States District Judge

SAVITHRI KAKANI, *et al.*,        Michael Hluchaniuk
                                   United States Magistrate Judge

       Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS TO DISMISS (Dkt. 37, 39, 43)**

**I.      PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections (MDOC) and currently housed at the Michigan Reformatory, filed this prisoner civil rights action on June 13, 2011. (Dkt. 1). Plaintiff alleges that defendants, Physician Assistant Savithri Kakani, Doctors Darrell Brady and Joseph Painter, Promedica Health System-Bixby Medical Center, an unknown healthcare provider, and an unknown medical employment agency, violated his rights under the United States Constitution. On November 23, 2011, this case was referred to the undersigned for pretrial matters by District Judge Robert H. Cleland. (Dkt. 25).

On August 4, 2011, the court dismissed two defendants, Promedica Health System-Bixby Medical Center and the unknown medical employment agency,

from the case because plaintiff's claims against them lacked merit. (Dkt. 12). On October 26, 2011, the court granted plaintiff's motion to amend his complaint to substitute Tim Schubert for the unknown medical healthcare provider and to add two state law claims against all defendants. (Dkt. 21).

Defendants Brady and Kakani filed a motion to dismiss, or in the alternative, motion for summary judgment on January 10, 2012. (Dkt. 37). Plaintiff filed a response to Defendants Brady and Kakani's motion on March 1, 2012. (Dkt. 47). Defendants Kakani and Brady replied to plaintiff's response on March 9, 2012. (Dkt. 48). Defendant Painter filed a motion to dismiss on January 20, 2012. (Dkt. 39). Plaintiff filed a response to defendant Painter's motion on March 13, 2012. (Dkt. 49). Defendant Painter replied to plaintiff's response on March 30, 2012. (Dkt. 55). Defendant Schubert filed a motion to dismiss on January 31, 2012. (Dkt. 43). Plaintiff filed a response to defendant Schubert's motion on March 21, 2012. (Dkt. 51). Defendant Schubert replied to plaintiff's response on March 29, 2012. (Dkt. 53). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED**.[1]

---

[1] Plaintiff has also filed a motion for leave to amend his complaint. (Dkt. 65). Nothing in plaintiff's motion cures the conclusion reached in this report and recommendation that he failed to exhaust his administrative remedies. Thus, the

## II. FACTUAL BACKGROUND

Plaintiff alleges violations of the Eighth Amendment's prohibition of cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process as a result of the treatment plaintiff received concerning his biopsy procedure. (Dkt. 22, pp. 4, 1-13). Plaintiff also alleges state claims of gross negligence and intentional infliction of emotional distress. (Dkt. 22, p. 14).

Plaintiff, who has hepatitis C, alleges that on April 25, 2009, defendant Kakani, a physician assistant, recommended plaintiff have a liver biopsy due to blood work that indicated plaintiff's liver was not functioning well. (Dkt. 22, pp. 4, 15). Plaintiff agreed to undergo a biopsy, which was completed on June 18, 2009, at Promedica Health System-Bixby Medical Center. *Id*. The procedure was performed by defendants Painter and Brady, both medical doctors, and defendant Schubert, a medical technician. (Dkt. 22, p 6). Plaintiff indicates that the procedure caused him distress "because of the pain [he] felt even though the area was supposedly numbed." *Id.*

Plaintiff was informed by defendant Kakani on or about July 28, 2009, that the biopsy sample did not contain enough liver tissue to properly examine, and defendant Kakani recommended a second biopsy. *Id*. Plaintiff agreed to the

---

motion to amend will be denied via separate order for the same reasons set forth herein.

second biopsy but later changed his mind because he did not want to endure the pain of the procedure again. *Id*. About three months after the biopsy, plaintiff began to experience "sporadic achy pains" in the area where the biopsy was performed. (Dkt. 22, p. 7). Patient states that he has no other medical issues that would account for this pain except the biopsy he underwent. *Id*. Plaintiff has consulted a physician and a psychologist for this issue. *Id*.

On March 3, 2001, approximately 19 months after the biopsy, plaintiff asserts that he learned his liver had been functioning normally, that defendant Kakani misinterpreted his blood work, and that defendant Kakani had incorrectly advised plaintiff to have a liver biopsy. (Dkt. 22, pp. 6-7). Plaintiff also states that he discovered he was not a candidate for liver biopsy according to MDOC's Bureau of Health Services Management Plan for Prisoners with Hepatitis C. (Dkt. 22, pp. 7-8).

Plaintiff alleges a violation of the Eighth Amendment's ban on cruel and unusual punishment because all defendants were deliberately indifferent to plaintiff's medical needs and denied him competent treatment. (Dkt. 22, p. 4). Plaintiff alleges a second violation of the Eighth Amendment because defendants Kakani and Brady "chose an easier, but less "efficacious" method of medical care," and alleges that defendants Painter and Schubert are "equally liable." *Id.* at 12. Plaintiff alleges three violations of the Fourteenth Amendment's right to due

process: (1) the "unjustified intrusion and/or infliction of pain" which defendants Kakani and Brady inflicted on plaintiff during the biopsy; (2) the infringement defendants Kakani and Brady imposed upon plaintiff's "entitlements to fundamental fairness when he was denied competent medical treatment and adequate medical care;" and (3) the failure of defendants Kakani and Brady to inform plaintiff of "possible complications and risks of the surgical procedure, alternative methods of treatment, and the results likely to occur if no treatment is sought." (Dkt. 22, pp. 12-13). Plaintiff alleges that defendants Painter and Schubert are "equally liable" for these Fourteenth Amendment claims as well. *Id*. In addition, plaintiff alleges state claims of gross negligence and intentional infliction of emotional distress against all defendants. (Dkt. 22, p. 14).

Plaintiff seeks the following:

1. Compensatory damages of $75,000 against each defendant, jointly and severally;

2. Punitive damages of $150,000 against each defendant;

3. A jury trial;

4. Plaintiff's costs in this suit;

5. An order requiring that defendants discontinue deficient medical treatment;

6. An order requiring that defendants implement a screening process of

any and all potential health care professionals that will promote the best competent medical services for prisoners with hepatitis C;

7. An order requiring that defendants implement clinical studies for prisoners with hepatitis C;

8. An order requiring that defendants implement liver transplant evaluations at all transplant centers in Michigan, provide transportation and illicit drug screening to prisoners in support of evaluation, work with transplant facilities to address any security concerns, and provide necessary security personnel;

9. An order requiring that defendants arrange for prompt transplant list placement at all medical centers determined to be eligible;

10. An order that defendants administer a new medical regimen to plaintiff to address plaintiff's hepatitis C without utilizing invasive biopsies;

11. An order that defendants designate a liver specialist to monitor plaintiff's progress through blood testing.

(Dkt. 22, pp. 4-5, 15-16).

### III. ANALYSIS AND CONCLUSIONS

#### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting, *Twombly,* 550 U.S. at 555 (internal citation and quotation marks omitted); *see also, League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus,* 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly,* the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is

not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.,* 532 F.3d 496 (6th Cir. 2008) (internal citations and quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Such is not the case here. Thus, when applying *Twombly,* the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner,* 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992); *Erickson,* 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

    B.    <u>Exhaustion of Administrative Remedies</u>

        1.    Legal Principles

Defendants Kakani, Brady, Painter, and Schubert move to dismiss the claims against them for failure to exhaust administrative grievance remedies. In *Jones v. Bock*, 549 U.S. 199 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or

demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1997e(a) must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *See Jones*, 549 U.S. at 217-18; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. (Dkt. 37-2 at ¶ P). If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance

process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). *Id*. at ¶ R. Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id*. at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶¶ T, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id*. at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id*. at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id*. at ¶ GG. Time limitations shall be adhered to by the inmate and staff

at all steps of the grievance process. *Id*. at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved ... ." *Id*. at ¶ HH.

### 2. Purpose of Exhaustion Requirement

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 89. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93, quoting, *Porter*, 534 U.S. at 525 (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94. Additionally, the

exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 915-16.

### 3.   Plaintiff's Administrative Grievance

Plaintiff filed a Step I grievance (Identifier: ARF-110030109-28E) on March 16, 2011, complaining about "gross inadequate medical care" with regard to the medical care and biopsy plaintiff received in April and June 2009, approximately nineteen months prior. (Dkt. 4, pp. 4-5). The grievance was denied without investigation because plaintiff exceeded the time limit to file a grievance per MDOC Policy Directive 03.02.130 described above. (Dkt. 4, p. 4). The grievance stated that plaintiff had not provided any reasonable circumstances beyond plaintiff's control that would have prohibited him from filing a timely grievance. *Id*. Plaintiff appealed with a Step II grievance on April 6, 2011, stating that plaintiff was unable to file a grievance in accordance with MDOC time limits because he did not learn about the inadequate medical care until March 3, 2011, and asserted that this established circumstances beyond plaintiff's control. (Dkt. 4, p. 8) ("The issues now pursued were inconceivable which prevented him from timely filing grievance."). The Step II appeal was denied on April 11, 2011, again stating that plaintiff had exceeded his time limit for filing. (Dkt. 4, p. 9). Plaintiff appealed this denial with a Step III grievance on April 19, 2011. (Dkt. 4, p. 2).

MDOC denied plaintiff's Step III appeal on July 12, 2011, affirming the decisions of Step I and Step II. (Dkt. 39-2, p. 2).

Plaintiff offers several reasons why the court should find that plaintiff exhausted his administrative remedies. First, plaintiff relies on *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), which held that a late grievance constituted exhaustion because the grievance concerned an ongoing Eighth Amendment violation of persistent deliberate indifference toward a chronic medical condition and also because the grievance was addressed by the prison system despite its untimeliness. *Id*. at 785. Plaintiff argues that since his hepatitis C is an ongoing medical condition, *Ellis* should apply. Defendants argue that plaintiff's grievance does not concern ongoing deliberate indifference toward his hepatitis C. (Dkt. 48, p. 3). Plaintiff's grievance indicates that the single biopsy procedure on one specific date is the issue, not the overall state of his hepatitis C management. *Id*. And, plaintiff admits that "prison officials did not address the substance of his complaint ... ." (Dkt. 15, p. 17). Plaintiff asserts that this is not relevant, however, because *Ellis* found that fair notice was enough. *See id*. at 791 ("[T]he pivotal question regarding exhaustion in our Circuit is whether defendants have been provided "fair notice" of the claim."). In the view of the undersigned, *Ellis*' holding concerns ongoing conditions, not a discrete incident; therefore, it does not apply here. *See*. at 791 (stating that fair notice *along with* claims

regarding ongoing medical conditions are to be considered exhausted).

Plaintiff next argues that his grievance is not late because the statute of limitations did not begin to run until he discovered his grievable issue. (Dkt. 51, p.19). Plaintiff relies on *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984), as support for this argument. *See*. at 273 (stating that the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury, and that the plaintiff has reason to know when he should have discovered it through the exercise of reasonable diligence). While plaintiff is correct regarding when the statute of limitations begins to run in a case concerning child support, the issue here is MDOC administrative policy concerning time limits for filing grievances in prisons, not the statute of limitations applicable to plaintiff's federal suit. Therefore, *Sevier* does not apply, and plaintiff's argument regarding statute of limitations is irrelevant.

Plaintiff states that even though his grievance was filed late, MDOC should have excused its tardiness because plaintiff had a valid reason for the delay. (Dkt. 46, p. 21). Plaintiff states that he did not become aware of the issue addressed in his grievance until March 3, 2011, almost two years after the biopsy took place. *Id.* at 20. Defendants argue that this cannot be correct because plaintiff admitted knowing about the issues in his complaint either during or shortly after the biopsy. (Dkt. 48, p. 3; Dkt. 52, p. 3). Plaintiff was aware of the pain he

experienced during the biopsy. (Dkt. 22, p. 6) ("The operation took approximately five minutes of which time I was in distress because of the pain I felt ... ."). Patient also states that he knew "that *prior to the biopsy* Dr. Brady failed to inform [him] of any complications and risks associated with the surgical procedure, alternative methods of treatment, and results likely to occur if [he] remained untreated." *Id*. at 7 (emphasis added). Patient also stated, "A few months after the biopsy I began having sporadic achy pains in the area the biopsy was performed and nightmares of the surgery . . . I can only assume at this stage that it is a result of the biopsy." *Id*. Despite knowing that he did not receive adequate information *before* the procedure, that he experienced pain *during* the procedure, and that he believed *shortly after* the procedure that the biopsy was the cause of his pain and nightmares, plaintiff did not begin to investigate or file a grievance until over a year later. Plaintiff did not provide an explanation for this, and without a valid reason for the delay, plaintiff's denial did not violate MDOC policy. (MDOC Policy Directive 03.02.130, ¶ P).

Even if MDOC overlooked the long delay, plaintiff still cannot establish that he properly exhausted his administrative remedies. MDOC Policy Directive 03.02.130 grievance procedure requires the inmate to attempt to resolve the issue verbally within two days of becoming aware of the grievance. *Id*. at ¶ P. If the issue was not resolved orally, only then can the inmate file a written grievance. *Id*.

at ¶ P.  Here, plaintiff admitted on his Step I grievance that he did not make any attempt to orally resolve the issue prior to writing the grievance.  (Dkt. 4, p. 4) ("What attempt did you make to resolve this issue prior to writing this grievance?  On what date? N/A.").  Therefore, plaintiff did not meet the exhaustion requirement because he failed to follow MDOC's procedural rules.  *See Woodford*, 548 U.S. at 90-91 (stating that proper exhaustion requires prisoners to complete the administrative review process in accordance with the deadlines and other applicable procedural rules).

Plaintiff relies on the dissent in *Woodford* to argue that grievances with procedural defaults still meet the requirements for exhaustion.  *See*. at 106  (dissent stating that a prisoner meets the technical requirements for exhaustion despite procedurally defaulting).  Plaintiff also relies on *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003), which held that "the timeliness of an inmate's grievance is irrelevant under the PLRA's exhaustion requirement," and *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004), which held that "compliance with the administrative remedy scheme will be satisfactory if it is substantial."  However *Woodford*'s dissent is not good law, and the Supreme Court's holding in *Woodford* stands in direct opposition to *Thomas* and *Spruill,* both Circuit Court cases.  *See Woodford*, 548 U.S. at 90 (holding that the exhaustion requirement means "proper exhaustion," defined as "compliance with an agency's deadlines and other critical

procedural rules ... .").

Based on the foregoing, plaintiff's late grievance failed to properly exhaust his administrative remedies. Therefore, plaintiff did not comply with PLRA's requirements, and his federal claims against defendants Kakani, Brady, Painter, and Schubert must fail.

### C. Plaintiff's State Claims

Plaintiff asks the court to exercise jurisdiction over his state law claims of gross negligence and intentional infliction of emotional distress. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn,* 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Booker v. City of Beachwood,* No. 10–3549, 2011 WL 6355190 (6th Cir. Dec.19, 2011); *Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009). There is no reason in this case to depart from that general rule.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 8, 2012                                  s/Michael Hluchaniuk
                                                          Michael Hluchaniuk
                                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on <u>June 8, 2012,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kimberley A. Koester, Ronald W. Chapman, Brian J. Richtarcik, Randall A. Juip, and Meredith L Mercurio</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Clark Jones, ID# 196605, MICHIGAN REFORMATORY, 1342 West Main Street, Ionia, MI 48846</u>.

                                                                           s/Tammy Hallwood  
                                                                          Case Manager  
                                                                          (810) 341-7887  
                                                                          tammy_hallwood@mied.uscourts.gov